IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GALVIN M. JEFFERSON, | ) | |
| | ) | |
| Petitioner, | ) | Civil No. 02-585-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| JAMES BARTLETT, Superintendent, | ) | |
| Oregon State Correctional Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Harrison Latto
400 S.W. Sixth Avenue, Suite 600
Portland, OR 97204

  Attorney for Petitioner

Douglas Park
DEPARTMENT OF JUSTICE
1162 Court Street, N.E.
Salem, OR 97301-4096

  Attorney for Respondent

JONES, Judge:

Petitioner, a former inmate at the Oregon State Correctional Institution, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his jury trial convictions for Sodomy in the First Degree, Rape in the First Degree, two counts of Rape in the Third Degree, Sodomy in the Third Degree and two counts of Assault in the Fourth Degree. Petitioner alleges that he was denied effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution. For the reasons set forth below, the Petition for Writ of Habeas Corpus (#4) is DENIED, and this action is DISMISSED WITH PREJUDICE.

## BACKGROUND

On April 16, 1996, a Multnomah County jury convicted petitioner of Sodomy in the First Degree, Rape in the First Degree, two counts of Rape in the Third Degree, Sodomy in the Third Degree and two counts of Assault in the Fourth Degree. (Respondent's Exhibits (#81) (hereafter "Resp't Ex."), at Ex. 101, p. 1.) Petitioner was sentenced to a total of 100 months of imprisonment. Id. Petitioner appealed his sentences to the Oregon Court of Appeals and the court affirmed the convictions without opinion. State v. Jefferson, 151 Or. App. 804, 960 P.2d 394 (1997). Petitioner did not appeal this judgment to the Oregon Supreme Court.

On July 15, 1998, petitioner filed his petition for post-conviction relief ("PCR") in Marion County. (Resp't Ex. at Ex. 105.) In his second amended petition, petitioner alleged that his rights to the effective assistance of counsel under the Constitution of the United States and the Constitution of the State of Oregon were violated. On December 22, 1999, following an evidentiary hearing, the Marion County Circuit Court issued a judgment denying the petition.

2 - OPINION AND ORDER

Petitioner appealed the PCR judgment to the Oregon Court of Appeals and the court affirmed without opinion. Jefferson v. Morrow, 175 Or. App. 553, 29 P.3d 627 (2001). Petitioner appealed the Court of Appeals' judgment to the Oregon Supreme Court and the Oregon Supreme Court denied review, thereby concluding the state courts' review of petitioner's claims. Jefferson v. Morrow, 333 Or. 162, 39 P.3d 192 (2001).

Petitioner filed the current action on May 6, 2002. In his memorandum in support of the petition, petitioner alleges essentially three claims for relief, all based on the ineffective assistance of counsel. Specifically, petitioner contends his trial attorney: (1) failed to obtain, before trial, a medical report about the victim's examination at the hospital; (2) failed to obtain and present expert medical testimony regarding the report; and, (3) coerced the petitioner to lie.

## DISCUSSION

### I. Exhaustion of Claims

#### A. Standard of Review

A petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C.§ 2254. Rose v. Lundy, 455 U.S. 509, 519 (1982). A state prisoner has not fairly presented his federal claims to a state court unless he has referenced specific provisions of the federal constitution or statutes, or cited to federal case law. Lyons v. Crawford, 232 F.3d 666, 670 (9th Cir. 2000) *as modified by* 247 F.3d 904 (9th Cir. 2001).

A petitioner must have also presented his claim in a procedural context in which its merits will be considered. Castille v. Peoples, 489 U.S. 346, 351 (1989). A petitioner is deemed

to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

**B. Analysis**

In his petition for review filed in the Oregon Supreme Court, petitioner alleged the following claims:

> 1. Did the trial court error [sic] in denying the admission of the affidavit of Dr. William Brady during petitioner's post conviction trial . . . [and] 2. Did petitioner's trial counsel provide effective assistance of counsel during his representation of petitioner with regard to obtaining and reviewing rape kit records and preparing a defense to the sexual assault charges levied against petitioner.

(Resp't Ex. at Ex. 140, p. 3.) Petitioner further elaborated on his second claim, arguing in his petition for review that trial counsel failed to obtain relevant medical information and because of this failure, did not obtain an expert to testify about the medical report. Furthermore, based on those omissions, trial counsel coerced petitioner into lying during trial to attempt to maximize his chances of winning at trial. (Id. at pp. 4-5.)

In the petition for habeas corpus filed in this court, petitioner alleged twelve grounds for relief. Of those, Claims Four, Six, Seven, Eight, Nine, Ten, Eleven, and Twelve were not presented, briefed or argued in petitioner's petition for review before the Oregon Supreme Court. Respondent's argument that those claims are procedurally defaulted is well taken because they

4 - OPINION AND ORDER

were not "fairly presented" to Oregon's highest court as required by the doctrine of exhaustion. *See* Rose v. Lundy, 455 U.S. 509, 519 (1982). In addition, those claims were not argued in petitioner's memorandum in support of petition before this court, and are, therefore, deemed abandoned. *Cf.* Doty v. County of Lassen, 37 F.3d 540, 548 (9th Cir. 1994) ("[t]he failure to brief [an] issue waives [the appellant's] right to appeal" it). Accordingly, this court will only address Claims One, Two, Three, and Five which, when the redundancies are removed, are the three claims presented to the Oregon Supreme Court, and the three claims that remain at issue in this case. [1]

## II. Relief on the Merits

### A. Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[The] AEDPA circumscribes a federal habeas court's review of a state-court decision." Lockyer v. Andrade, 538 U.S. 63, 70 (2003). A federal court's "independent consideration of the constitutional issue

---

[1] The claims as stated by petitioner in his petition filed in this court are as follows: Ground One: Conviction obtained by use of coerced confession; Ground Two: Conviction obtained by a violation of the privilege against self-incrimination; Ground Three: Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant; and, Ground Five: Denial of effective assistance of counsel. (Petition (#4), pp. 4-5.)


is neither relevant, nor necessary to dispose of the question presented." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.), *cert. denied* 540 U.S. 968 (2003). "'The only question that matters under § 2254(d)(1), . . . is whether or not the . . . state court's decision is contrary to or involved an unreasonable application of, clearly established Federal law." Id. (quoting Lockyer, 538 U.S. at 69). The state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

A state court acts "contrary to" clearly established federal law if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. Lockyer, 538 U.S. at 73; Bell v. Cone, 535 U.S. 685, 694 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Ramdass v. Angelone, 530 U.S. 156, 164-66 (2000). Only those Supreme Court holdings in effect at the time the state court renders its decision constitute "clearly established Federal law" under § 2254(d)(1). Lockyer, 538 U.S. at 71-2; Clark, 331 F.3d at 1069.

A state court decision is an "unreasonable application of" clearly established federal law if the court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. Lockyer, 538 U.S. at 75; Williams, 529 U.S. at 412-13; Ramdass, 530 U.S. at 166. Under this standard of review, a federal court may not issue a writ of habeas corpus simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. Lockyer, 538 U.S. at 75-6; Williams, 529 U.S. at 411. Rather, the state court decision must be "objectively unreasonable."

Lockyer, 538 U.S. at 76 (citing Williams, 529 U.S. 409; Bell, 535 U.S. at 699; Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam)).  A habeas petitioner bears the burden to show that the state court made an objectively unreasonable application of a Supreme Court case.  Price v. Vincent, 538 U.S. 634, 641 (2003) (citing Woodford, 537 U.S. at 24-25).

### B. Facts

All of the charges arising in this case relate to a sexual relationship petitioner had with the then fifteen-year-old victim.  At the time of the incident, petitioner, who was thirty-six years old, and victim were engaged in an ongoing sexual relationship, during which they had consensual vaginal intercourse three or four times over the course of two to three weeks.  (Transcript of State Court Proceedings (#82) (hereafter "Tr.") at  94, 96.)  The victim told petitioner she was over sixteen years old.  (Tr. at  93.)  On September 9, 1995, while at a friend's house, the victim made plans to meet petitioner.  While waiting for him to arrive, the victim and her friend went to drink beer and smoke marijuana with the boys next door.  (Tr. at 99-100, 213-14.)  When petitioner arrived to meet the victim, he was angry with her for being at the house next door, called her "stupid" and told her to get in the car.  (Tr. at 103-4.)  During a stop to purchase cigarettes, they encountered Rhonda Payton, who alleged that the victim previously had spent the night with Payton's fifteen-year-old son.  (Tr. at 110.)  The victim told petitioner that she did not have sex with the boy, but petitioner didn't believe her and struck her on the face with the back of his hand.  (Tr. at 111-12.)  Petitioner continued to inquire whether the victim had sex with the boy, and when the victim denied having sex, petitioner continued to strike the victim on her face as he drove.  When they reached petitioner's uncle's house, petitioner hit her again and later slammed the car door on her leg as she was getting out of the car.  (Tr. at 114.)

Petitioner then had the victim sit on the hood of the car, where he continued to interrogate her about the boy, hitting her in the face whenever she denied having sex with him. Finally, the victim told petitioner "yes" so that he would stop hitting her. (Tr. at 114-16.)

Petitioner and victim got back in the car and drove to a motel, where the victim gave petitioner money for a room, "[b]ecause he asked for it and I wasn't about to get hit no more." (Tr. at 118.) Once inside the room, petitioner told the victim to take her clothes off; she took off her pants and he took off the rest of her clothing. (Tr. at 122.) Petitioner noticed a bruise on the victim's thigh, above the knee. When he asked her about it, she said her stepfather had given it to her. (Tr. at 342.) Petitioner told the victim that if she was going to be a whore she should do it for money, and if she was going to be doing it, she should learn how. (Tr. at 124-25.) Petitioner caused her to perform oral sex on him during which petitioner ejaculated in her mouth and she spit out the ejaculate on the side of the bed. (Tr. at 125-26.) After that, they engaged in vaginal sex, which the victim assented to because she "didn't want to get beat up no more." (Tr. at 126-27.) The victim fell asleep, but petitioner woke her up and had anal sex with her although she told him not to do that. (Tr. at 128-29.) She took a shower after the anal sex and put her underwear and shorts back on. After petitioner woke up, they had vaginal sex again, which the victim permitted because of everything that had happened that night. (Tr. at 129-30.) The victim was unsure how many times petitioner had ejaculated that night, guessing "probably every time" it happened. (Tr. at 164.)

Petitioner testified on his own behalf that he and the victim had gone to the motel "[t]o have sex." (Tr. at 338.) He admitted that he slapped the victim in the face earlier in the evening, but asserted that they had made up before they got to the motel. (Tr. at 339.) Petitioner also

testified that they had vaginal sex three times while at the motel and that he ejaculated two of those times.[2]  (Tr. at 343-44.)  He denied having oral or anal sex.  (Tr. at 379.)

Before trial, petitioner's trial attorney made a formal demand on the prosecutor for production of all discoverable material.  (Resp't Ex. at Ex. 114.)  The demand specifically included a request for any information, including reports, produced during the victim's examination at the Oregon Health Sciences University Hospital ("OHSU").  The petitioner's trial attorney acknowledged in the affidavit he submitted during the PCR trial that he did not receive this information.  (Resp't Ex. at Ex. 113, p. 3.)  At the beginning of trial the judge advised the parties that he had an envelope with the OHSU records, which he unsealed and delivered to the prosecutor, who made a copy for himself and for petitioner's trial attorney.  However, the copy delivered to petitioner's trial attorney was incomplete; it was missing the last page of the three-page report from the physician who performed the rape examination of the victim.  (Resp't Ex. at Ex. 113.)  Each page of the report was clearly marked, "Page 1 of 3", "Page 2 of 3", and " Page 3 of 3."   Specifically, the missing page of the report included a close-up diagram of the rectal and vaginal areas, which was used to document any injury to either area.  There were no marks on the doctor's diagram, indicating that the doctor had not observed any trauma to those areas.  In addition, the missing page of the report recorded the swab collection of secretions taken from the vagina, rectum, and cervix of the victim.  The report indicated no evidence of sperm on any of the specimen collected, nor was there evidence of sperm on the victim's body.

---

[2]Petitioner testified that the second time he had sex with the victim, he entered her from the back.  He was not asked whether he ejaculated the third time they had sex.

9 - OPINION AND ORDER

At the PCR trial, petitioner submitted the affidavit of Dr. William Brady, a board certified pathologist, who performed "thousands" of examinations in sexual assault cases over a 40-year career. (Resp't Ex. at Ex. 124.) Dr. Brady faulted the investigation of petitioner's trial attorney in two respects. First, he opined that the defense should have had a forensic expert test the swabs taken from the victim during the rape examination, so that an "unequivocal determination could have been made as to whether the alleged sexual assaults took place." Id. at 2. Second, Dr. Brady stated:

> Based upon my experience and training in the field of sexual assault, and given a young girl the age of [the victim] without having experienced any prior acts of anal sex, I would expect to have seen some physical evidence in the form of bruising or tearing of the anus if there had been vigorous and forceful penetration of the anus.

Id.

At the end of the trial, the jury found petitioner guilty of Sodomy in the First Degree (anal sodomy), Rape in the First Degree, two counts of Rape in the Third Degree, Sodomy in the Third Degree and two counts of Assault in the Fourth Degree. (Tr. at 512-20.) He was acquitted of Sodomy in the First Degree (oral sodomy) and Kidnaping in the First Degree. Id.

**C. Ineffective Assistance of Counsel**

To prevail on a claim of ineffective assistance of counsel, petitioner must show both that (1) his attorney's performance fell below an objective standard of reasonableness; and (2) the performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466

U.S. at 687. While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." Id. at 689.

To establish the second prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In determining whether a defendant was prejudiced by ineffective assistance of counsel, the court should examine whether the "'result of the proceeding was fundamentally unfair or unreliable.'" United States v. Palomba, 31 F.3d 1456, 1460-61 (9th Cir. 1994) (quoting Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)).

### 1. Ground One

Petitioner alleges he was denied the effective assistance of counsel because trial counsel failed to obtain in advance of trial and discuss with petitioner the complete medical report from the victim's rape examination at the hospital. Following an evidentiary hearing, the post-conviction court entered the following pertinent findings of fact:

> 1. Petitioner received adequate assistance of counsel. Further, had counsel been ineffective in the manner petitioner alleges, this would have had no effect on the outcome of the proceedings.
>
> ////
>
> 3. Counsel was diligent in attempting to obtain a complete copy of the rape examination report performed on the victim. The medical records were delivered to the trial court pursuant to petitioner's subpoena. By its colloquy, the court essentially granted a protective order.
>
> ////
>
> 5. Counsel did not to [sic] request permission from the court to review the victim's medical reports with petitioner prior to trial. There was no reason to do so because petitioner was not expected to deny having had sex with the victim.

11 - OPINION AND ORDER

>   Further, this allowed petitioner's testimony to be independent from the evidence in the records, thus providing an argument for petitioner's credibility. Counsel's decision falls within the perimeters of trial strategy, tactics, and manner of advocacy.

(Resp't Ex. at Ex. 135, p. 3.)

The post-conviction court then made the following conclusions of law:

>   17. Based on the findings set forth above, in the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution . . . or the Constitution of the State of Oregon.

Id. at p. 6.

The state court's findings of fact are presumed correct; upon a thorough review of the record, I find that petitioner has not met the burden of rebutting those findings with clear and convincing evidence. See Lockyer, 538 U.S. at 70. In his affidavit, trial counsel explained that he attempted to obtain the victim's medical report before trial, but the report was not provided until the beginning of trial. (Resp't Ex. at Ex. 113.) Once he received the report, trial counsel made a tactical decision not to show the report to petitioner. Trial counsel used the medical report to corroborate petitioner's testimony, specifically about the bruises observed on the victim's leg.[3] Id. Furthermore, trial counsel explained that he did not view the medical evidence

---

[3]On direct examination, the following exchange between petitioner and his lawyer took place.
>   Q: Did you notice anything unusual when she undressed?
>   A: I noticed a bruise on her leg.
>   //
>   Q: Did she tell you how she had gotten [the bruise]?
>   A: Yes, she did.
>   Q: Did she indicate she'd gotten it that night by the car door?
>   A: No, she didn't.
>   Q: Have you seen any medical records in regard to this case?
>                                                            (continued...)

12 - OPINION AND ORDER

as particularly important because petitioner was not contesting that sexual acts had occurred.[4]

Id.     Any error made by trial counsel in not obtaining the medical report in advance of trial was not so serious that counsel was not functioning as counsel at the trial. Trial counsel chose to use the report to bolster petitioner's credibility, rather than use the report to attempt to prove that no sex had occurred at the motel. Trial counsel's judgment that a jury would not believe that petitioner and victim, who already had an ongoing consensual sexual relationship, went to a motel and did not engage in sexual activity was the kind of reasonable legal judgment attorneys use when representing defendants. The performance of trial counsel did not fall below an objective standard of reasonableness as required by the Strickland case and its progeny.

"[I]t is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford, 537 U.S. at 24. Petitioner has not met this burden; therefore, habeas relief is not permissible under § 2254(d). See, id. at 361. Accordingly, petitioner is not entitled to relief on the merits of the claim in Ground One that he was denied effective assistance of counsel by counsel's failure to obtain the medical records and discuss them with petitioner prior to trial.

---

[3](...continued)
A: No, I haven't.
//

Trial attorney showed petitioner the medical report and the drawing indicating a bruise on victim's leg.
    Q: Does that drawing show . . . about where you observed the bruise you saw?
    A: Yes, it does.
    Q: And did you learn how that bruise occurred?
    A: Yes, I did . . . she straight told me her stepdad put it there.

[4]At trial, petitioner testified under oath that he and the victim engaged in sexual intercourse on the night in question. (Tr. at 342-44.)

13 - OPINION AND ORDER

14 - OPINION AND ORDER

### 2. Ground Two

Petitioner alleges he was denied effective assistance of counsel because trial counsel failed to obtain and present expert testimony about the results of the medical examination of the victim, and argues that if this testimony had been presented, the result of the trial would have been different. The post-conviction court made the following findings of fact, in addition to those listed above:

> 4. While evidence contained in the rape examination report specified that no semen was present on the victim, it did not refute that a rape occurred.
>
> ////
>
> 13. It was counsel's reasonable professional opinion that the doctor who examined the victim, or any other medical expert, would have been of no benefit to petitioner's case. This is because petitioner did not refute that he had sex with the victim, but rather argued that they had consensual sex.
>
> 14. Petitioner claims that from the Affidavit of William Brady, some undescribed and unnamed test might have "conclusively determined if these people had sex." There is no foundation for the testimony, and it does not meet the standards of Daubert. As such, it is excluded.

(Resp't Ex. at Ex. 135, pp. 3, 5.)

Petitioner argues that the failure of counsel to present expert medical evidence had a reasonable likelihood of affecting the outcome of the case because an expert could have shown that the victim would have sustained genital injuries if she had been sodomized as she described. My review of the record in this case leads me to conclude that the petitioner has not produced clear and convincing evidence to rebut the presumption that the PCR court's findings of fact are correct with respect to Ground Two or to show that the outcome of the trial would have been altered.

15 - OPINION AND ORDER

In his affidavit, trial counsel explained that he did not view the medical evidence as particularly important because they were not contesting that sexual acts had occurred. What was at issue was whether the acts were consensual. Had trial counsel presented an expert to testify about the results of the medical exam, the prosecution would, most likely, also have presented an expert, who would have offered evidence about the likelihood of the presence or absence of physical evidence of rape. At the PCR trial, the examining physician testified that depending on how well the victim washed herself at the motel, the shower could potentially clean any semen from the exterior of her body as well as her vaginal and anal orifices. (Resp't Ex. at Ex. 117, p. 11.) The lack of such physical evidence does not automatically clear a defendant of rape charges.

Furthermore, during summation, trial counsel argued as follows:

> Nowhere in here, as you already heard, is there any evidence of any injury, trauma, swelling to the anus . . . . Now I think common sense says, as she described it, there ought to be trauma. You ought to see something . . . . Nowhere in this report or in anything you've heard is any evidence that there was any sperm or other ejaculate found . . . . That absence of evidence tells you that she's lying too. You've got all of her lies and you've got the physical evidence not being there.

(Tr. at 469-471.)

Trial counsel did not ignore the medical evidence in this trial. Trial counsel's decision not to get into a battle of experts, but instead to use the medical report to try to undermine the victim's credibility was within the acceptable wide range of reasonable professional judgment. Because petitioner has not satisfied his burden to show that the state PCR court applied Strickland to the facts of his claim in an objectively unreasonable manner, he is not entitled to

relief on the merits of the claim alleged in Ground Two. *See*, Woodford, 537 U.S. at 27; 28 U.S.C. § 2254(d).

### 3. Ground Three

Petitioner alleges that his right to effective assistance of counsel was denied because his trial attorney's failure to obtain the medical report and medical experts resulted in trial counsel coercing the petitioner to lie during trial. Petitioner contends that if trial counsel had obtained the medical report and discussed the contents of the report with petitioner before trial, the information would have corroborated petitioner's initial assertion that he and the victim had not engaged in any sexual activity at the motel. Instead, when petitioner asserted that he and the victim did not engage in sex, trial counsel told petitioner that it was unlikely a jury would believe that petitioner and the victim went to the motel on the night in question and did not engage in sex. Given that advice, petitioner testified that he and the victim had consensual sex at the motel.    The PCR court made the following pertinent findings:

> 7. Counsel did not advise and/or encourage petitioner to present a defense which was not based upon the facts of the case, and in no way convinced petitioner to perjure himself. Assuming trial counsel advised petitioner he did not think it likely that the jury would believe petitioner's story if petitioner testified that he did not have sex with the victim on the night in question, there is a clear distinction between advising a client as to the likelihood of certain findings by the jury and advising a client to lie.
>
> ////
>
> 10. Petitioner's version of his purpose in taking the victim to a motel on the night in question has changed several times, from his testimony at trial, to his parole board hearing, to his deposition in this matter. Further, the petitioner's present position is inconsistent with the evidence of the victim's mother, petitioner's actions on the night in question, the victim's statements to police and friends, and her physical and emotional description.

17 - OPINION AND ORDER

>   11. Petitioner now claims that he previously lied under oath, and has asked this court to find that he is now telling the truth that he lied to another court. The trial jury believed petitioner's testimony that he slapped the victim in the face several times and then had sex with her. There is no reason for this court not to believe the same testimony. Obviously, the jury did not find the sex to be consensual.

(Resp't Ex. at Ex. 135, pp. 4, 5.)

Having thoroughly reviewed the record in this case, I find that petitioner has not produced clear and convincing evidence to rebut the correctness of the PCR court's findings of fact with respect to Ground Three. In his affidavit, trial counsel stated: "I did not advise [petitioner] of what to say; I did not suggest that [petitioner] testify as to any particular facts; . . . I never advised [petitioner] to testify falsely and, to the best of my knowledge, he did not do so." (Resp't Ex. at Ex. 113.) The decision of the PCR court determined that trial counsel was more credible than petitioner. (Resp't Ex. at Ex. 128 at p. 2, n. 1.) Again, because the record supports the PCR court's conclusions of law with respect to Ground Three, the PCR court's application of <u>Strickland</u> to the facts at issue was not objectively unreasonable. Accordingly, petitioner is not entitled to relief on the merits of the claim raised in Ground Three. <u>See</u> <u>Woodford</u>, 537 U.S. at 27; 28 U.S.C. § 2254 (d).

## CONCLUSION

For the foregoing reasons, petitioner's Petition for Writ of Habeas Corpus (#4) is DENIED, and this action is DISMISSED WITH PREJUDICE.

DATED this 20th day of November, 2006.

    /s/ Robert E. Jones
    RO BERT E. JONES
    U.S. District Judge